IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| CLIFTON ONUNWOR, | ) | CASE NO. 1:14 CV 651 |
| | ) | |
| Petitioner, | ) | JUDGE LESLEY WELLS |
| | ) | |
| v. | ) | MAGISTRATE JUDGE |
| | ) | WILLIAM H. BAUGHMAN, JR. |
| ERNIE L. MOORE, Warden, | ) | |
| | ) | |
| Respondent. | ) | **REPORT & RECOMMENDATION** |

## Introduction

Before me by referral[1] is the petition of Clifton Onunwor for a writ of habeas corpus under 28 U.S.C. § 2254.[2] Onunwor is incarcerated by the State of Ohio at the Lebanon Correctional Institution, where respondent Ernie Moore is Warden.[3] Onunwor is serving a sentence of life without parole imposed in 2009 by the Cuyahoga County Court of Common Pleas after he was convicted at a jury trial of aggravated murder, with firearm specifications, as well as two counts of tampering with evidence.[4]

In his petition, Onunwor raises two claims for relief, each predicated on assertions that his trial counsel was constitutionally ineffective.[5] The State, in its return of the writ, argues

---

[1] ECF # 6.

[2] ECF # 1.

[3] ECF # 12 at 2.

[4] ECF # 1 at 1.

[5] *Id.* at 48, 80.

that both claims should be dismissed as procedurally defaulted.[6] Onunwor has filed a traverse.[7]

For the reasons that follow, I will recommend dismissing the petition as procedurally defaulted.

# Facts

## A.    Background facts, trial and sentencing

The relevant background facts were found by the Ohio appeals court in its review of the record:[8]

> The facts revealed at trial showed that Onunwor worked as an armed security guard for T.D. Security at the Wilkoff and Sons Scrapyard on East 47th Street and Woodland Avenue, in Cleveland, Ohio. According to coworker, Andrew Savoca, who was working the 11:00 p.m. to 7:00 a.m. shift at the scrapyard and whose shift overlapped with Onunwor's, Onunwor was absent from work for approximately two and one-half to three hours around the approximate time of the murder on September 18, 2008, and that he never had been away from work that long before.

> Specifically, Savoca testified that he was working the 8:00 p.m. to 4:00 a.m. shift, and Onunwor was working the 11:00 p.m. to 7:00 a.m. shift. On the night of the murder, Onunwor arrived at work between 11:30 p.m. and 11:45 p.m., wearing tan pants and an Izod brand shirt, as opposed to his usual uniform, and that he left approximately one-half hour later. (Tr. 502–503.)

---

[6] ECF # 12.

[7] ECF # 19.

[8] Facts found by the state appellate court on its review of the record are presumed correct by the federal habeas court. 28 U.S.C. § 2254(e)(1); *Mason v. Mitchell*, 320 F.3d 604, 614 (6th Cir. 2003) (citing *Sumner v. Mata*, 449 U.S. 539, 546-47 (1981)).

Savoca testified that on the night of the murder, he and Onunwor were posted in a guard tower at Wilkoff and Sons and, before leaving during his shift, Onunwor asked Savoca if he would call his cell phone in approximately one-half hour. When Savoca did so, he saw Onunwor's cell phone lying on the desk of the guard tower. Savoca testified that Onunwor did not return to work until sometime after 2:30 a.m.

Savoca also testified that in the time preceding the murder, Onunwor was desperate to borrow Savoca's firearm or trade guns with Savoca for some unknown reason, but that Savoca would not agree to do so. Savoca also recalled that Onunwor repeatedly asked him if he knew anyone who was selling a gun, and that after returning to work on the night of the murder, Onunwor again asked Savoca if he could borrow his gun.

The State also presented the testimony of David Pennington, who admitted that in August 2008, he let Onunwor borrow his Smith & Wesson nine millimeter firearm in exchange for the use of Onunwor's Glock 17 firearm. After learning from Onunwor that he was in jail on suspicion of murder, Pennington panicked and threw Onunwor's Glock 17 in a dumpster on East 104th and St. Clair Avenue in Cleveland, Ohio. He later admitted to the Cleveland police that he did so out of fear.

The State also presented the testimony of Onunwor's neighbor, Joshua Hanna ("Hanna"). Hanna testified that he has known Onunwor for over 15 years, having grown up on the same street. On the day of the murder, he testified that he saw police tape cordoning off the Onunwor house and became concerned, so he stopped. As Hanna stood with another neighbor, Harry Jones, Onunwor approached them and asked Hanna if he would hold something. Onunwor then produced between four and six bullet casings or "gun shells," as Hanna described them. (Tr. 368.) Hanna asked Onunwor, "What do you want me to do with these?" Onunwor replied that he wanted Hanna to keep them, and that he would come and get them the next day. (Tr. 369.) After Onunwor walked away, Hanna testified that he tossed the shell casings in a yard nearby, because he did not want anything to do with the situation. (Tr. 370.) He told police about the encounter and described where he had tossed the shell casings. Later, the police recovered the shells. (Tr. 371.) Hanna testified that Onunwor's body language and conversation were subdued, and that he did not cry or have any emotional outbursts at the murder scene. (Tr. 373.)

State's witness Ron Gilson ("Gilson") testified that his cousin Tabia Gilson-Williams was dating Onunwor at the time of the murder, and that he and Onunwor were friends. He testified that on Friday, September 19, 2008, he received a text message from Onunwor stating: "move da toys out of da house now – even mine now." (Tr. 588–590.) Gilson took this message to mean that Onunwor wanted Gilson to remove all the guns from the house in which Gilson and his cousin lived and where Onunwor occasionally stayed. Upon receiving the message, Gilson went to his cousin Tabia's bedroom and removed a nine millimeter pistol from a tote bag, which was later proven to be the murder weapon. Gilson placed the gun under the seat of his truck. When Cleveland Police detectives questioned Gilson about the weapon, he led them to it.[9]

In addition, the appeals court noted that:

Sergeant Willson [a Cleveland police ballistics expert] testified that the unique tool markings on the inside of the barrel of the Smith & Wesson nine millimeter gun matched the same etchings on shell casings found at the murder scene. This, coupled with the testimony of David Pennington, who unwittingly lent Onunwor the same type of weapon responsible for firing the shots that killed the victim and which was recovered by police, allowed the jury to essentially place Onunwor at the scene with the alleged murder weapon.[10]

A Cuyahoga County Grand Jury indicted Onunwor on one count of aggravated murder, with one- and three-year firearm specifications, along with two counts of tampering with evidence.[11] The case proceeded to a jury trial, and Onunwor was found guilty of all counts.[12]

---

[9] ECF # 12-1 (state court record), at 97-99.

[10] *Id.*, at 92.

[11] *Id.*, at 87.

[12] *Id.*

-4-

On August 21, 2009, the trial judge sentenced Onunwor to life in prison without the possibility of parole for the aggravated murder conviction, and a consecutive three-year sentence for the firearm specifications, which sentence merged with the life sentence.[13] In addition, Onunwor was sentenced to two years in prison for his convictions for tampering with evidence, which sentence was also merged with the life sentence.[14]

## B.     Direct appeal

### 1.     *Ohio court of appeals*

On September 15, 2009, Onunwor, represented, as at trial, by the Cuyahoga County Public Defender, timely[15] filed a notice of appeal.[16] In his supporting brief, Onunwor raised the following eight assignments of error:

> ASSIGNMENT OF ERROR I: *THE TRIAL COURT VIOLATED CLIFTON ONUNWOR'S RIGHTS UNDER THE FIFTH, SIXTH, AND FOURTEENTH AMENDMENTS OF THE CONSTITUTION, AS WELL AS THE RULES OF EVIDENCE, WHEN IT PERMITTED A POLICE WITNESS TO TESTIFY AS AN "EXPERT" CONCERNING FIREARMS IDENTIFICATION EVIDENCE PURPORTEDLY ANALYZED IN THE CASE.*

> ASSIGNMENT OF ERROR II: *CLIFTON ONUNWOR'S RIGHT TO DUE PROCESS AND A FAIR TRIAL WERE VIOLATED BY THE JURY'S EXPOSURE TO GRUESOME AND UNFAIRLY PREJUDICIAL CRIME*

---

[13] *Id.*

[14] *Id.*

[15] Under Ohio App. Rule 4(A), to be timely, a party must file a notice of appeal within 30 days of the judgment being appealed. *See also*, *Smith v. Konteh*, No. 3:04CV7456, 2007 WL 171978, at *2 (N.D. Ohio Jan. 18, 2007).

[16] ECF # 12-1, at 6.

*SCENE PHOTOGRAPHS THAT HAD AT BEST LIMITED RELEVANCE TO THE PROSECUTION'S CASE*

ASSIGNMENT IF ERROR III: *MR. ONUNWOR'S RIGHT TO DUE PROCESS AND A GRAND JURY INDICTMENT VIOLATED WHEN PROSECUTORS AMENDED COUNTS TWO AND THREE AFTER TRIAL*

ASSIGNMENT OF ERROR IV: *CLIFTON OUNWOR WAS DEPRIVED OF LIBERTY WITHOUT DUE PROCESS OF LAW, WHERE HIS CONVICTIONS FOR AGGRAVATED MURDER AND TAMPERING WITH EVIDENCE ARE AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE*

ASSIGNMENT OF ERROR V: *THE PROSECUTOR'S REMARKS TO THE JURY, FIRST DURING VOIR DIRE AND LATER IN SUMMATION, CONSTITUTED MISCONDUCT WHICH VIOLATED CLIFTON ONUNWOR'S RIGHTS UNDER THE FIFTH, SIXTH AND FOURTEENTH AMENDMENTS OF THE CONSTITUTION.*

ASSIGNMENT OF ERROR VI: *OHIO'S REASONABLE DOUBT STANDARD INVITES THE JURY TO FIND GUILT ON LESS THAN PROOF BEYOND A REASONABLE DOUBT THEREBY DEPRIVING VERNON BROWN OF HIS LIBERTY WITHOUT DUE PROCESS OF LAW*

ASSIGNMENT OF ERROR VII: *CLIFTON ONUNWOR'S RIGHTS UNDER THE FIFTH SIXTH AND FOURTEENTH AMENDMENTS AS WELL AS OHIO'S RULES OF EVIDENCE WERE VIOLATED WHEN THE PROSECUTION INTRODUCED HIS PRE-ARREST PRE-MIRANDA SILENCE AS SUBSTANTIVE EVIDENCE OF GUILT IN THE STATE'S CASE IN CHIEF*

ASSIGNMENT OF ERROR VIII: *CLIFTON ONUNWOR'S SIXTH AMENDMENT RIGHT TO THE EFFECTIVE ASSISTANCE OF COUNSEL WAS VIOLATED WHERE TRIAL COUNSEL FAILED TO RAISE OBJECTIONS TO IMPROPER EVIDENCE AND COMMENTS AND THEREBY PRESERVE ISSUES FOR FURTHER REVIEW*[17]

---

[17] *Id.*, at 9-10.

The State filed a brief in response.[18] On November 18, 2010, the Ohio appeals court overruled all the assignments of error, affirming the conviction and sentence.[19]

## 2.    The Supreme Court of Ohio

On January 3, 2011, Onunwor, again represented by the county public defender, timely[20] filed a notice of appeal with the Supreme Court of Ohio.[21] In his memorandum in support of jurisdiction, he set forth the following six propositions of law:

> **Proposition of Law I:** *THE TRIAL COURT VIOLATES THE ACCUSED'S RIGHT UNDER THE FIFTH, SIXTH, AND FOURTEENTH AMENDMENTS OF THE CONSTITUTION WHEN IT PERMITS THE PROSECUTION TO USE UNRELIABLE JUNK SCIENCE TO SECURE A CONVICTION FOR AGGRAVATED MURDER.*
>
> **Proposition of Law II:** *THE TRIAL COURT VIOLATES THE ACCUSED'S RIGHT TO DUE PROCESS AND A FAIR TRIAL WHEN IT PERMITS THE JURY'S EXPOSURE TO GRUESOME AND UNFAIRLY PREJUDICIAL CRIME SCENE PHOTOGRAPHS THAT HAVE NO RELEVANCE TO THE PROSECUTION'S CASE.*
>
> **Proposition of Law III:** *THE ACCUSED'S RIGHTS TO DUE PROCESS NOTICE AND A GRAND JURY INDICTMENT VIOLATED WHEN PROSECUTORS AMENDED COUNTS TWO AND THREE AFTER TRIAL.*
>
> **Proposition of Law IV:** *THE PROSECUTOR'S REMARKS TO THE JURY, FIRST DURING VOIR DIRE AND LATER IN SUMMATION, CONSTITUTED MISCONDUCT WHICH VIOLATED CLIFTON ONUNWOR'S RIGHTS*

---

[18] *Id.*, at 67.

[19] *Id.*, at 85.

[20] To be timely under Ohio Supreme Court Rule of Practice 2.2(A)(1)(a), a notice of appeal must be filed within 45 days of entry of the appellate judgment for which review is sought. *See also*, *Applegarth v. Warden*, 377 F. App'x 448, 450 (6th Cir. 2010).

[21] ECF # 12-1, at 110.

*UNDER THE FIFTH, SIXTH AND FOURTEENTH AMENDMENTS OF THE CONSTITUTION.*

*Proposition of Law V: WHEN THE COURT PERMITS THE PROSECUTION TO INTRODUCE EVIDENCE OF THE ACCUSED'S PRE-ARREST PRE-MIRANDA SILENCE IN THE STATE'S CASE IN CHIEF IT VIOLATES HIS RIGHTS UNDER THE FIFTH SIXTH AND FOURTEENTH AMENDMENTS.*

*Proposition of Law VI: TRIAL COUNSEL IS INEFFECTIVE WHERE HE FAILS TO RAISE OBJECTIONS TO IMPROPER EVIDENCE AND COMMENTS AND THEREBY PRESERVE ISSUES FOR FURTHER REVIEW.*[22]

The State waived the filing of a responsive memorandum.[23] Then, on March 2, 2011, the Supreme Court of Ohio denied leave to appeal, dismissing the matter as not involving any substantial constitutional question.[24]

## C.    Post-conviction petition

While the direct appeal was pending, Onunwor, through the same county public defender, filed a petition for post-conviction relief, raising the following three claims:

I.     The Petitioner Was Denied His Sixth Amendment Right to the Effective Assistance of Counsel Where his Attorneys Failed to Investigate, Develop and Present Evidence that would have Undermined the Prosecution's Case, and Thereby Prejudiced his Defense.

II.    The Petitioner Was Denied His Right to a Fair Trial and Due Process Free from Prosecutorial Misconduct as Guaranteed by the Fifth, Sixth and Fourteenth Amendments of the U.S. Constitution.

---

[22] *Id.*, at 113.

[23] *See*, ECF # 12 at 8.

[24] ECF # 12-1, at 153.

-8-

III.    Mr. Onunwor is Actually Innocent of the Offense and the New Evidence Contained herein Demonstrates that his Conviction was Based on Insufficient Evidence in Violation of the State and Federal Constitutions.[25]

After Onunwor amended the petition,[26] and the State filed a brief in opposition,[27] to which Onunwor responded,[28] the trial court denied the petition.[29]

Onunwor, through counsel, then timely[30] filed an appeal.[31] In his brief, Onunwor raised  the following assignment of error:

THE TRIAL COURT'S SUMMARY DISMISSAL OF CLIFTON ONUNWOR'S PETITION FOR POST-CONVICTION RELIEF VIOLATED HIS RIGHT TO DUE PROCESS BECAUSE THE COURT DID SO WITHOUT MEANINGFULLY ADDRESSING THE NEW EVIDENCE UPON WHICH THE PETITION WAS BASED OR ANALYZING ITS IMPACT ON THE ONUNWOR'S CASE OVERALL.[32]

---

[25] *Id.*, at 170, 172, 173.

[26] *Id.*, at 315.

[27] *Id.*, at 324.

[28] *Id.*, at 341.

[29] *Id.*, at 352.

[30] The notice of appeal was filed on January 31, 2012, or within 30 days of the judgment of the trial court on January 6, 2012.

[31] *Id.*, at 355.

[32] *Id.*, at 357.

The State filed a brief in response,[33] and then, on October 18, 2012, the Ohio appeals court affirmed the decision of the trial court.[34] Onunwor filed an application for reconsideration,[35] which was denied on November 18, 2012.[36]

Onunwor, again through counsel, filed a timely notice of appeal with the Supreme Court of Ohio.[37] In his memorandum in support of jurisdiction, Onunwor set out the following single proposition of law:

> ***Proposition of Law I:*** *THE TRIAL COURT VIOLATES OHIO'S POST CONVICTION LAW AND PETITIONER'S RIGHT TO DUE PROCESS WHEN IT SUMMARILY DISMISSES A PETITION FILED THEREUNDER WITHOUT ADDRESSING THE NEW EVIDENCE UPON WHICH THE PETITION IS BASED, ITS IMPACT ON THE CASE OVERALL, OR THE CONSTITUTIONAL CLAIMS IMPLICATED BY THAT EVIDENCE.*[38]

The State did not respond, and on March 27, 2013, the Supreme Court of Ohio declined jurisdiction.[39]

---

[33] *Id.*, at 388.

[34] *Id.*, at 397.

[35] *Id.*, at 410.

[36] *Id.*, at 420.

[37] *Id.*, at 421. The notice of appeal was file on December 27, 2012.

[38] *Id.*, at 424.

[39] *Id.*, at 488.

**D.    Motion to re-open the appeal**

Approximately five months after the Ohio Supreme Court declined jurisdiction in the matter of Onunwor's post-conviction petition, Onunwor, now *pro se*, filed a motion with the appeals court to re-open his direct appeal pursuant to Rule 26(B).[40] In support of that motion, Onunwor asserted that his appellate counsel was ineffective in the following three areas:

    1.    APPELLANT HAD INEFFECTIVE ASSISTANCE OF TRIAL COUNSEL WHEN, ATTORNEY OF RECORD FAILED TO MOVE TO SUPPRESS ALL EVIDENCE THAT WAS TAKEN OFF HIS PHONE AFTER DEFENDANT WAS TAKEN INTO CUSTODY, WITHOUT A SEARCH WARRANT BEING ISSUED.

    2.    APPELLANT HAD INEFFECTIVE ASSISTANCE OF TRIAL COUNSEL WHEN, ATTORNEY OF RECORD DURING THE SUPPRESING *[sic]* FAILED TO ADDRESS WHETHER OR NOT THE CELL PHONE RECORDS USED HAD BEEN PROPERLY AUTHENTICATED AS BUSINESS RECORDS, WHICH VIOLATES DEFENDANTS CONFRONTATIONAL CLAUSE. AND, APPELLANT COUNSEL WAS ALSO INEEFECTIVE *[sic]* FOR FAILING TO RAISE THIS ISSUE ON DIRECT APPEAL.

    3.    APPELLANT HAD INEFFECTIVE ASSISTANCE OF TRIAL COUNSEL WHEN, ATTORNEY OF RECORD FAILED TO MOVE TO SUPPRESS ALL PHONE RECORDS THAT A WARRANT HAD NOT BEEN OBTAINED FOR.[41]

The State opposed the motion to re-open,[42] and on September 24, 2013, the Ohio appeals court denied the motion.[43] In that regard, the appeals court noted that the appellate

---

[40] *Id.*, at 454.

[41] *Id.*, at 454-55.

[42] *Id.*, at 489.

[43] *Id.*, at 496.

judgment at issue was entered on November 18, 2010, and the application to re-open was filed on August 18, 2013.[44] As such, the Ohio court observed, the application was filed well beyond the 90-day period set by law, and Onunwor provided no "good reason" for the untimeliness.[45]

Onunwor, *pro se*, then appealed that decision to the Ohio Supreme Court,[46] advancing the following two propositions of law:

> Proposition of Law I. When cell phone records and informations from cell phone it's self, without 1st obtaining a warrant from the Trial Court, are used to convict an appellant, said conviction violates the 4th Amend. and the Due Process Clause, of the U.S. Constitution. See State V. Smith 2009-Ohio-6426
>
> Proposition of Law II. When cell phone records have not been properly used and Authenticated at Trial, the use of said records violate the confrontational clause of the U.S. Constitution. See State V. Hood 2012-Ohio-6208[47]

The State did not file a responsive memorandum, and the Ohio Supreme Court declined jurisdiction.[48]

_____

[44] *Id.* at 499.

[45] *Id.* The court specifically found that the reason given by Onunwor – the lack of access to the prison law library – was not a "good reason" for the delay under Ohio law.

[46] *Id.*, at 502.

[47] *Id.*, at 507.

[48] *Id.*, at 515.

**E.      Federal habeas petition**

On March 25, 2014, Onunwor, through the office of the Federal Public Defender appointed by this Court,[49] filed the present petition for habeas relief raising the following two grounds for relief:

> GROUND ONE: Mr. Onunwor's Trial Counsel Provided Ineffective Assistance in Violation of the Sixth Amendment; Had Trial Counsel Conducted a Reasonable Investigation, the State Would Not Have Been Able to Prove the Necessary Element of Prior Calculation and Design, and Mr. Onunwor Would Have Been Acquitted of Aggravated Murder

> GROUND TWO: Mr. Onunwor's Trial Counsel Provided Ineffective Assistance in Violation of the Sixth Amendment; Had Trial Counsel Conducted a Reasonable Investigation, the State's Evidence of Guilt Would Have Been In Doubt[50]

As noted, the State argues that both claims for relief here should be dismissed as procedurally defaulted. Onunwor, for his part, maintains in his traverse that the basis for the purported procedural default is not an adequate and independent state law ground that is regularly followed by Ohio courts, and so the alleged default must not be enforced by this Court.

## Analysis

**A.      Preliminary observations**

Before proceeding further, I make the following preliminary observations:

---

[49] Case No. 1:13-MJ-9176 (N.D. Ohio August 28, 2013)(non-document entry).

[50] ECF # 1 at 48, 80.

-13-

1.  There is no dispute that Onunwor is currently in state custody as a result of his conviction and sentence by an Ohio court, and that he was so incarcerated at the time he filed this petition. Thus, Onunwor meets the "in custody" requirement of the federal habeas statute vesting this Court with jurisdiction over the petition.[51]

2.  There is also no dispute, as detailed earlier, that the petition here was timely filed under the applicable statute.[52]

3.  In addition, Onunwor states,[53] and my own review of the docket in this Court confirms, that this is not a second or successive petition for federal habeas relief as to this conviction and sentence.[54]

---

[51] 28 U.S.C. § 2254(a); *Ward v. Knoblock*, 738 F.2d 134, 138 (6th Cir. 1984).

[52] 28 U.S.C. § 2254(d)(1); *Bronaugh v. Ohio*, 235 F.3d 280, 283-84 (6th Cir. 2000). Although the State maintains that the present petition is timely filed because it was submitted within one year of the Ohio Supreme Court declining Onunwor's appeal from the denial of his Rule 26(B) motion (*see*, ECF # 12 at 12-13), such a computation impermissibly starts with the assumption that Onunwor's Rule 26(B) application itself was properly filed. In fact, as the Ohio appeals court noted, that application was untimely by nearly three years, and Onunwor presented no good reasons for his delay. Thus, this untimely Rule 26(B) application and subsequent appeal would not toll the limitations period.
But, the petition is timely filed for other reasons.  Specifically, Onunwor properly filed a petition for post-conviction relief while his direct appeal was still pending. That properly filed petition for post-conviction relief tolled operation of the habeas limitations period until the post-conviction petition was ultimately resolved in the Ohio courts on March 27, 2013 – a date well after the conclusion of direct review on March 2, 2011. Thus, the one-year habeas limitations period began to run on March 27, 2013, and so required that a petition for federal habeas relief be filed before March 27, 2014. The present petition was filed on March 25, 2014, and so is timely.

[53] ECF # 1 at 13.

[54] 28 U.S.C. § 2254(b); *In re Bowen*, 436 F.3d 699, 704 (6th Cir. 2006).

4.      Moreover, it appears that these claims have been totally exhausted in Ohio courts by virtue of having been presented through one full round of Ohio's established appellate review procedure.[55]

5.      Finally, because Onunwor is represented by counsel, he has not requested the appointment of counsel,[56] nor has he requested an evidentiary hearing to develop the factual bases of his claims.[57] I note that Onunwor has requested additional discovery,[58] and that such motion has been denied.[59] Onunwor has "objected" to that order.[60] However, if the Court adopts the recommendation here that this petition be dismissed as procedurally defaulted, any issue concerning additional discovery would be moot.

**B.      Standard of review – procedural default**

Under the doctrine of procedural default, the federal habeas court may not review a claim for relief if the petitioner failed to obtain consideration of that claim on its merits in state court, either because the petitioner failed to raise it when state remedies were still available or because of some other violation of a state procedural rule.[61]

---

[55] 28 U.S.C. § 2254(b); *Rhines v. Weber*, 544 U.S. 269, 274 (2005); *O'Sullivan v. Boerckel*, 526 U.S. 838, 842 (1999).

[56] 28 U.S.C. § 2254(h); Rule 8(c), Rules Governing 2254 Cases.

[57] 28 U.S.C. § 2254(e)(2).

[58] ECF #26.

[59] ECF # 29.

[60] ECF # 30.

[61] *Lundgren v. Mitchell*, 440 F.3d 754, 763 (6th Cir. 2006).

-15-

When the State asserts a violation of a state procedural rule as the basis for the default, the Sixth Circuit has long-employed a four-part test to determine if the claim is procedurally defaulted in a federal habeas proceeding:

(1)     Does a state procedural rule exist that applies to the petitioner's claim?

(2)     Did the petitioner fail to comply with that rule?

(3)     Did the state court rely on that failure as the basis for its refusal to address the merits of the petitioner's claim?

(4)     Is the state rule violated by the petitioner an adequate and independent state law basis for barring the federal court from considering the claim?[62]

In addition to establishing these elements, the state procedural rule must be (a) firmly established, and (b) regularly followed before the federal habeas court will decline review of an allegedly procedurally defaulted claim.[63]

If the State establishes a procedural default, the petitioner may overcome the default if he can show (1) cause for the default and actual prejudice from the court's failure to address the alleged constitutional violation, or (2) that a lack of review of the claims merits will result in a fundamental miscarriage of justice.[64] In addition, a showing of actual innocence may also excuse a procedural default.[65]

---

[62] *Morales v. Mitchell*, 507 F.3d 916, 937 (6th Cir. 2007) (citation omitted).

[63] *Smith v. Ohio Dep't of Rehab. & Corrs.*, 463 F.3d 426, 431 (6th Cir. 2006) (citations omitted).

[64] *Coleman v. Thompson*, 501 U.S. 722, 750 (1991).

[65] *Id.*

-16-

To establish "cause" for the default, a petitioner must generally show that some objective factor, something external to himself, prevented him from complying with the state procedural rule.[66] Demonstrating "prejudice" requires the petitioner to show that the alleged constitutional error worked to his actual and substantial disadvantage, infecting the entire proceeding with error of a constitutional dimension.[67] If the petitioner cannot show a reasonable probability of a different outcome at trial, prejudice does not exist.[68]

Notwithstanding these elements, the Supreme Court has held that federal habeas courts need not consider an assertion of procedural default before deciding a claim against the petitioner on the merits.[69] In that regard, the Sixth Circuit has stated that a federal habeas court may bypass an issue of procedural default when that issue presents complicated questions of state law and addressing it is unnecessary to resolving the claim against the petitioner on the merits.[70]

**C.    Application of standard – the petition should be dismissed as procedurally defaulted.**

The procedural default issue here is a narrow one, and somewhat technical.

---

[66] *Id.* at 753.

[67] *United States v. Frady*, 456 U.S. 152, 170 (1982).

[68] *Mason v. Mitchell*, 320 F.3d 604, 629 (6th Cir. 2003).

[69] *Lambrix v. Singletary*, 520 U.S. 518, 525 (1997).

[70] *Hudson v. Jones*, 351 F.3d 212, 215-16 (6th Cir. 2003).

In that regard, there is no doubt that Onunwor raised the two claims now asserted here in his petition for post-conviction relief.[71] But, as the State points out, although the post-conviction petition was properly filed in the trial court, Onunwor defaulted these claims in the appeals court by failing to comply with Ohio Appellate Rule 9(B) and provide a transcript of the trial court proceedings to the Ohio appeals court, which court then relied on Onunwor's failure to comply with Ohio Appellate Rule 9(B) as a bar to consider his claims.[72]

## 1. *Existence of the procedural default*

Onunwor does not dispute that the trial court transcript was not filed with the appeals court in his appeal from the trial court's denial of post-conviction relief but argues that Ohio law is unclear as to whether the transcript must be filed by the trial court or by the party seeking relief.[73] Thus, Onunwor contends, Ohio Appellate Rule 9(B) is not an "adequate and independent" state law basis on which to foreclose federal habeas review, and so there is no procedural default in this case.[74]

Onunwor is actually questioning whether Ohio Appellate Rule 9(B) is "firmly established and regularly followed" and not whether it is an "adequate and independent" state law ground. As is well-settled, a state rule is an independent basis for precluding federal

---

[71] *See*, ECF # 19 (traverse) at 5-8.

[72] ECF # 12 at 15-16.

[73] ECF # 19 at 9-11.

[74] *Id.*

habeas review when it does not itself rely on federal law.[75] Plainly, there is no federal constitutional issue involved in whether a transcript must be filed by the appellant or forwarded by the trial court. As such, a state rule in this regard would be independent of federal constitutional underpinnings and, if relied on to foreclose review, adequate to that end.

The question of whether Ohio Appellate Rule 9(B) is "firmly established and regularly followed" does not seem to have been directly addressed by federal habeas courts in Ohio. But the Supreme Court of Ohio has clearly articulated the purpose and scope of Rule 9(B) in a manner that eliminates any purported confusion along the lines that Onunwor alleges.

In *Knapp v. Edwards Laboratories*,[76] the Supreme Court of Ohio confronted a situation where an appellant failed to produce a transcript on appeal but contended that this failure should be excused because the lack of a transcript was the fault of the trial court reporter, who had not prepared a transcript due to illness.[77] In construing the duties on an appellant set forth in Ohio Appellate Rule 9(B), the Ohio Supreme Court stated:

> (1)(2) The duty to provide a transcript for appellate review falls upon the appellant. This is necessarily so because an appellant bears the burden of showing error by reference to matters in the record. See <u>State v. Skaggs</u> (1978), 53 Ohio St.2d 162, 372 N.E.2d 1355. This principle is recognized in App.R. 9(B), which provides, in part, that " * * * the appellant shall in writing order from the reporter a complete transcript or a transcript of such parts of the

---

[75] *Wilson v. Mitchell*, 498 F.3d 491, 499 (6th Cir. 2007) (citing *Coleman*, 501 U.S. at 732).

[76] *Knapp v. Edwards Laboratories*, 61 Ohio St. 2d 197, 400 N.E.2d 384 (1980).

[77] *Id.*, 61 Ohio St. 2d at 197-98, 400 N.E.2d at 384-85.

-19-

proceedings not already on file as he deems necessary for inclusion in the record * * *." [FN*] When portions of the transcript necessary for resolution of assigned errors are omitted from the record, the reviewing court has nothing to pass upon and thus, as to those assigned errors, the court has no choice but to presume the validity of the lower court's proceedings, and affirm.

> FN* It is also true that the appellee must bear some burden for providing an adequate transcript under App.R. 9(B). The relevant portion of that rule states that "(i)f the appellee deems a transcript of other parts of the proceedings to be necessary he shall * * * file and serve on the appellant a designation of additional parts to be included." However, this does not relieve an appellant from the primary burden of providing a transcript.[78]

In particular, the Ohio Supreme Court is clear that an appellant's failure to provide a transcript on appeal deprives the reviewing court of any basis for adjudicating the assigned errors. In effect, the failure to comply with the state rule in this regard actually prevents any further meaningful review on appeal and so must preclude the appellate court from any consideration of the merits.

But in addition, the Ohio Supreme Court is careful to observe that the rules provide options to appellants when there is a problem with obtaining the transcript. Appellate Rule 9(C) allows an appellant to prepare a narrative transcript when no verbatim transcript is available, and Rule 9(D) authorizes the parties to submit an agreed upon statement of the case in lieu of the record.[79]

---

[78] *Id.*, 61 Ohio St. 2d at 199, 400 N.E.2d at 385.

[79] *Id.*, 61 Ohio St. 2d at 199-200, 400 N.E.2d at 385-86.

However, both the mandate of Rule 9(B) and these alternative ways of providing a record on appeal go to the clear, unmistakable duty in Ohio law of the appellant to provide a record for the appeals court to  review the proceedings of the trial court. Ohio Revised Code § 2953.21C, which speaks to the responsibility of the appeals court to consider the "court reporter's transcript" as part of the record it reviews in a post-conviction matter, does not, as Onunwor implies, create an alternative responsibility on the trial court to see that the transcript is filed.[80] Rather, as the Ohio Supreme Court definitively concluded[81] in *Knapp*, "[t]he duty to provide a transcript for appellate review falls upon the appellant."[82]

Accordingly, there is no confusion or contradiction in Ohio law as to the responsibility of the appellant to provide the transcript on appeal, as is set forth in Ohio Appellate Rule 9(B), and that this state rule is firmly established and regularly followed so as to provide a basis for a procedural default in federal habeas proceedings.[83]

---

[80] ECF # 19 at 10-11.

[81] Rulings by a state supreme court with respect to state law are binding on the federal courts. *Wainwright v. Goode*, 464 U.S. 78, 84 (1983).

[82] *Knapp*, 61 Ohio St.2d at 199, 400 N.E.2d at 385.

[83] Onunwor's argument that, in practice, trial courts supply the transcript to the appellate court ( ECF # 19 at 11) does not directly refute this conclusion. Whatever the local practice may be as to <u>how</u> a transcript is forwarded to the appellate court, it remains Ohio law that the appellant is the party <u>who</u> has the duty to ensure that such a transcript is eventually filed on appeal.

## 2.    *Cause for the default*

Alternatively to claiming that no procedural default exists, Onunwor asserts that any default arising from a failure to file the transcript with the appeals court was caused by the ineffectiveness of his appellate counsel.[84] Onunwor argues that despite the fact that there is no right to counsel in post-conviction matters, the Supreme Court's holding in *Martinez v. Ryan*[85] permits him to here excuse the default created by his post-conviction attorney's failure to file the transcript.[86]

*Martinez* by its own terms carved out a "narrow exception to the longstanding rule of *Coleman v. Thompson* that, because there is no right to counsel in post-conviction matters, ineffective assistance of counsel in those proceedings cannot be cause to excuse a procedural default.[87] Rather, *Martinez* held that "[i]nadequate assistance of counsel at initial review collateral proceedings may establish cause for a procedural default of claims of ineffective assistance at trial."[88] In so holding, the Court considered that the "collateral review proceeding is in many ways the equivalent of a prisoner's direct appeal as to the ineffective assistance claim."[89]

---

[84] ECF # 19 at 12-13.

[85] *Martinez v. Ryan*, 132 S. Ct. 1309 (2012).

[86] ECF # 12 at 12.

[87] *Martinez,* 132 S. Ct. at 1315.

[88] *Id.*

[89] *Id.* at 1317.

The situation here is not, however, equivalent to that presented in *Martinez*, but instead most closely resembles the situation in *Coleman*, which the *Martinez* Court was careful not to disturb.

*Martinez*, by its own, express terms, applied to the "initial-review" collateral proceeding, or in Ohio law, the proceeding before the trial court on a post-conviction motion.[90] *Martinez* reasoned that when "an attorney errs in initial-review collateral proceedings, it is likely that no state court at any level will hear the petitioner's claim."[91] Thus, because that initial-review collateral proceeding is equivalent to the initial direct appellate review, the Court concluded that "as an equitable matter," it would allow a federal habeas court to hear a claim of ineffective assistance of trial counsel notwithstanding any procedural default caused by petitioner's counsel in the initial-review collateral proceeding.[92]

*Coleman*, by contrast, dealt as *Martinez* explicitly states, with procedural default that occurred in an "appeal from the initial-review collateral proceeding, and in that proceeding the prisoner's claims had been addressed by the state habeas trial court."[93] In that situation, exactly as is the case here, *Martinez* teaches that while counsel's errors in an appeal from the initial post-conviction proceeding may well "preclude any further review of the prisoner's claim, the claim will have been addressed by one court, [such as] the trial court in an initial-

---

[90] *Id.*

[91] *Id.*

[92] *Id.* at 1317-18.

[93] *Id.* at 1316.

-23-

review collateral proceeding."[94] Thus, the exception for excusing a procedural default outlined in the distinctly different circumstance of the initial-review collateral proceeding does not apply.

Accordingly, on the same basis as is set out by the Supreme Court itself in *Martinez*, Onunwor cannot excuse the procedural default created on the appeal from the denial of his post-conviction petition by claiming it was caused by ineffectiveness of his appellate counsel.

## Conclusion

For the reasons stated above, I recommend dismissing Clifton Onunwor's petition for federal habeas relief in its entirety as procedurally defaulted.

Dated: April 30, 2015                              s/ William H. Baughman, Jr.
                                                   United States Magistrate Judge

## Objections

Any objections to this Report and Recommendation must be filed with the Clerk of Courts within fourteen (14) days of receipt of this notice. Failure to file objections within the specified time waives the right to appeal the District Court's order.[95]

---

[94] *Id.*

[95] *See*, *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). *See also*, *Thomas v. Arn*, 474 U.S. 140 (1985), *reh'g denied*, 474 U.S. 1111 (1986).